Good morning, Your Honor. We'd like to reserve 10 minutes of our time for rebuttal. Okay. That's not a power move, but it does reflect what I think is the state of the case of the appeal after the briefing was completed. So, unless I'm going to get questions right away, I'll just summarize briefly what's in our opening brief. There were two alleged conspiracies, an original conspiracy and then a cover-up conspiracy. The trial court made different errors with respect to each one. With respect to the original conspiracy, the trial court first turned tomely a nick ball on its head in a way that is unprecedented. The trial court, instead of assessing the plausibility of the claims, assessed the plausibility of the factual allegations underpinning the claims. That made for a finder of fact, supplanted the role of a jury, and she skipped the in-between step, the in-between step being, starting with the presumption that the factual allegations are true, the trial court simply looks to see if there's an exception to that, either because the factual allegations are fantastic or delusional, to use the analogy that Justice Souter did in his Iqbal dissent, little green men, time travel, trips to Pluto, things of that nature, or because the factual allegations are purely conclusions. Neither of those categories applied, and she simply ignored her obligation to presume the factual allegations to be true. She instead set herself up as the pathologist-in-chief, the police officer-in-chief, and so forth. She completely supplanted the role of the jury. Mr. North, where in your complaint do you allege injury? An injury that's within the statute of limitations. I think what I have, other than the original making of the trust, is some, well, I guess I'll just leave it at that. Where is your injury within the statute of limitations for this case? Well, the injury is when Mr. Moolah learned that virtually all assets of the trust had been taken by his father, his aunt, and his uncle. When was that? Well, when they were taken and when he discovered it. When did he discover it? 2019 at the earliest, well within the statute of limitations in a case that was filed in. I thought he had discovered it in 2012.  And this is another, well. If he discovered it in 2012, then the statute of limitations applies, correct? Would apply to what he discovered in 2012. Which was the sale of the four properties. Yes. However. So wasn't he on notice at that time? No. It isn't. That's where the trial court went off the rails. What she did was she applied the very pattern discovery rule that was rejected in Rotella, also authored by Souter. What Mr. Moolah discovered in 2012 was that there had been deathbed deeds. But those deathbed deeds were ineffectual. They never transferred anything out of the trust. And you can't have a discovery of injury. Well, didn't the probate court affirm or give its blessing to those transfers? 2006 and Mr. Moolah on the pleadings did not know about that step in the equation until 2019. Why is Mr. Moolah's interest, remainder interest in the trust sufficient to convey standing for RICO purposes? Because it vested. The trust upon his grandmother's death became irrevocable. But as I understand it, did the trust provide him any right at all to anything more than the residue? Yes, it did, because it limited his aunt, the life beneficiary, to the statutory needs. She was only able to use the trust, race, and interest income and so forth, profits, for the statutory purposes of health, maintenance, education, and welfare. She couldn't just willy-nilly gift herself money. So that meant she had to preserve most of it that wasn't used in that way, and none of it was used in that way. None of it was used in that way by her when she was the trustee. And when she was conserved, the successor trustee testified that she did not ever hit upon the grandmother's trust because the aunt had a multimillion-dollar trust of her own. She had no need to touch it, and she didn't. If that's insufficient for an injury for our purposes, what other injuries? Do you have something about attorney's fees? What attorney's fees? And these were, I think, tell us more about when those were incurred and the nature of those. When Mr. Mueller began to litigate in the probate court in 2019, he began to incur attorney's fees. He proceeded probate. He'd hired lawyers in 2012. Well, that was a relatively minor amount of money, but he did. Well, but for purposes of notice of the injuries that he knew or should have known, that he hired a lawyer to try to get to the bottom of these questions. Who lied to him. Okay, but how is that part of the inquiry for a RICO injury? The question is whether he knew he was. But the only thing he learned in 2012 on the pleadings, which is what we're talking about, the only thing he learned was that deathbed deeds purporting to transfer property out of the trust had been marked shortly before his grandmother's death. But they didn't succeed in doing it. And you can't take an event that did not cause injury and use it as a marker for injury that starts the running of a statute of limitations. And so in 2012, he knew that the deathbed deeds, and he also knew that they were ineffective, so he knew that he was not injured. Is that your argument? He did not know that. No. On the face of the pleadings, what he learned of in 2012 was the fact that deathbed deeds had been obtained. And that's not sufficient notice of the injury of the conspiracy that he acknowledges. Well, that's the problem. There was no notice of an injury because the event he acquired knowledge of didn't cause injury. It couldn't because the deeds were ineffective. So it was a mistake of fact or something.  But even if he knew that he was injured, he hadn't actually been injured yet. Even if he mistakenly thought he had been injured, he hadn't been. And his attorney, who the complaint alleges was in cohorts with the conspirators in the second conspiracy, misled him into believing that any ability to attack those transfers which he mistakenly thought had occurred was time-barred, and it wasn't. And the lawyer who told him that was a creditor's lawyer who was well-experienced and clearly familiar with California's what's now called the Avoidable Transfer Act, but then was called the Fraudulent Transfer Act. Let's shift gears just for a second, counsel. Why do you want us to take judicial notice of Wikipedia entries regarding the exhuming of historic figures and testing hair follicles and things of that sort? Because the trial court below set herself up as a pathologist-in-chief and based on her own supposition concluded that it was impossible to obtain forensic evidence 17 or 18 years after death. So the Wikipedia articles, each of which is accompanied by an official publication of the United States government, shows widespread knowledge that the opposite is true, and then the government issued. Were any of these articles or publications available to the trial court? No. The whole issue was manufactured by the trial court. None of this came up. The defendants didn't come in and say, oh, you know, look, here's scientific evidence that you can't obtain forensic evidence that long after death. They couldn't have done so because it's clear from the motion for judicial notice that we have numerous instances of far longer periods of time when autopsies were performed, even a century and a half after death, and enough forensic evidence was recovered to determine the cause of death. Counsel, we've taken you deeply into your very long rebuttal time. You still have five minutes or so left, so if you want to take that, we'll have your colleagues on the other sides talk. I guess Mr. Vucinich? Vucinich, Your Honor. Vucinich, all right. Jeff Vucinich. And I appreciate the opportunity to talk with you, and I represent Christopher Bjorn, an attorney, law firm, the Chris Law Firm, and I'm going to address issues only related to him. I'll defer to my other counsel on the issues of injury, statute of limitations, and matters that relate to him. I heard counsel say that Judge Freeman was off the rails, manufactured something. There was no error on her part. No error whatsoever, and we, of course, agree, and agree then some with respect to her findings. My client, Christopher Bjorn, is a wills and trusts lawyer. He's been a lawyer for about 30 years, well respected in the community. And what was he accused of in this matter? He's accused of being a co-conspirator, aiding or abetting a RICO-ish statute. He, a respected attorney, is accused of a pattern of wrongful conduct involving robbery, murder, something to do with no basis whatsoever, the parties murdering their mother, the father and his brother murdering their mother. And that's what he's accused of in writing. If you're going to make an accusation like that, you better have proof to back it up. And there is none. What's the complaint against him in this matter? What's the basis of it? And it's on page 50 of the complaint. He was referred by Mr. Temerman. He was referred a client, and that client was the plaintiff. And so he's a referral attorney. Now he's accused of violating a RICO statute. He's accused of essentially murder, robbery, looting for a referral. That's what it is. And the words fantastical and delusional I heard from plaintiff's counsel relative to this claim, and that's what it is. With respect to a RICO statute, they have to show there's some common purpose. He received a referral. That's it. There's no allegations of a common purpose against him. Counsel, is this circuit recognized an independent claim for aiding and abetting in a civil RICO case? Absolutely not.  And I was going to get to that, and I was also going to get to, and that's part of our brief, and the circuit does not recognize aiding and abetting. In addition, I would point out. And the claim against your client is strictly an aiding and abetting claim, correct? That is true. All right. It's right to the point of it. And I think it fails on that basis. In addition, in their opening brief, they didn't argue that. Okay? They didn't argue anything about opening and abetting, and my understanding, under the law, they're precluded from raising it now. And they didn't, and they raised it in their reply brief, but they did not argue it in their opening brief, and we cited case law to the effect in our brief that they're now precluded from raising it now. So it's an aiding and abetting case. It's precluded in the Ninth Circuit. And I was about to go through all the reasons why under RICO it doesn't apply, but what's his motive? There's no motive. There's no common purpose. He doesn't benefit from it. There's just nothing connected with him. Other than that, he's an attorney who gets a referral and moves on, and it wasn't applied correctly, and it's not appropriate under the law. Any questions? I don't have anything, Counsel. Thank you. It looks like we have none. I would like to just add one thing, and I do apologize. You know, I heard the words fantastical and delusional. I think this is a miscarriage of justice, an abuse of the legal process, to claim to some attorney who gets a referral that you're part of a murder, you're part of aiding and abetting in a murder, and to have that in writing and to have that out for the community to know. And that's why I'd like the Court to end this, and I appreciate your time and effort, and I appreciate Judge Freeman's rulings. Thank you. We'll hear from Mr. Huntley. Good morning, Your Honor. Hannibal Huntley for Terry Campbell Wallace, appellee. May it please the Court, I would like to join with Mr. Vucinich's point regarding the aiding and abetting liability as to Ms. Wallace, insofar as that she's accused of aiding and abetting with the original conspiracy. My overall argument addresses two points. First, that appellant has not shown any enterprise liability for either conspiracy, and second, that all predicate acts alleged by appellant fail. First, enterprise liability requires a common purpose, a structure, and longevity to accomplish that purpose. Furthermore, a RICO conspiracy requires some part in directing from each of the members of the conspiracy. So who's going to address the statute of limitations issue?  All right, because you heard us talk about that. So it's the problem with chopping it up. He's going to have five minutes to talk about one of the few issues that really seems to drive this case. But go ahead. Continue. Thank you, Your Honor. Turning to the first conspiracy, we believe that there was no plausible showing of a RICO enterprise carried out by the siblings. There's no evidence of any communications between the siblings of the enterprise. There's no plausible allegation or assertion of any level of participation from each of the individual sibling appellees. And finally, there was no allegations of any decision-making structure or operational structure for the first conspiracy. Turning to the second conspiracy, the cover-up conspiracy, there was no allegation in appellant's original complaint or in their opening brief of any prior connection between Temmerman, Bye, or Smith. And as previously stated, the only connection between Temmerman and Mr. Bjorn was tenuous insofar as that it was a referral. There was also no adequate allegation of a nexus or their coordination between the parties. The court should keep in mind these parties were probate court-appointed professionals. They had no motive or other reasoning to participate in the cover-up of the original conspiracy. And then appellant also fails to show the connection between the various actions in the cover-up conspiracy. He merely describes various independent acts. Turning to the pattern of racketeering activity, which is also required under RICO, that's two or more predicate acts. For the first conspiracy, the district court was correct, and appellant fails to show how his murder allegation was plausible. The only evidence put forward in the original complaint is three effectively conclusory statements from the murder victim's caretaker regarding certain symptoms that she allegedly experienced. Notably, that caretaker was not an expert on poisoning or in any other way qualified to render an opinion on those allegations. There's also no linkage between the sibling appellees and the murder allegation, insofar as that it's just not contained in the original complaint. Turning to the looting predicate act, which was also alleged in the first conspiracy, there's no indication that the trust assets were actually stolen. As my co-counsel will address later, all of the probate court transfers of property in the 2006 hearings were approved by the probate court. Similarly, all of the transfers from the Schwab account from the Osher Trust were also approved by the probate court. Finally, Helena, the trustee of the original Osher Trust and the Stuckey Trust, had absolute discretion to use those funds for her own health, education, welfare, and support, which I feel that appellant does not contest or is otherwise able to rebut. Counsel, collectively the three of you are suggesting, or you've also filed a motion for judicial notice, 11 documents. Were those 11 documents available to the trial court? Yes, Your Honor. And how were they available? I believe that they were available just as a record of a previous proceeding. Okay. All right. Were they, was there a motion for judicial notice made before the trial court? I don't believe so, Your Honor. Okay. At least not for those specific hearings. And why do we need to take judicial notice of those documents now? They are relevant to the allegations contained in the opening brief. Appellant makes reference to those specific probate court proceedings. And thus, I believe, we believe that those records of those proceedings should be entered into their records simply because appellant opens the door for them to be noticed. Thank you, counsel. We'll hear from Mr. McCollum. Statute of limitations. Thank you, Your Honors. Ethan McCollum for McDowell-Cotter for the appellee, Alan Moulet. Yes, the statute of limitations. The appellees don't dispute that the injury discovery rule from Rotella and Grimmett apply. And the district court used that rule in its decision. The argument is everything he knew in 2012 didn't actually injure him. That's what I understand is the argument. It didn't actually injure him, but if it did, that's when he was put on notice to do an investigation, exercise reasonable diligence, and investigate further. He went to Beorn. In his complaint, he alleges he went to Mr. Beorn to inquire about these deathbed deeds. He was told by Beorn, allegedly, that the statute of limitations had expired. And therefore, he went home and sat on his claims. But if there was no – if these were deathbed deeds that were ineffective, there would be no statute of limitations at issue. So more than likely, I think the court can draw an inference that he was actually discussing the petition for the – to correct the deathbed deeds with Mr. Beorn. Mr. McCallum, as I read Judge Freeman's order, she references or she relies in part, after she does her RICO elements analysis, on the statute of limitations as it applies to the first RICO claim. It does not appear that she relied upon the statute of limitations as it relates to the second RICO claim. Does the statute of limitations also apply to the second RICO claim? In other words, are the damages the same? My colleague, Judge Johnstone, refers to the attorney's fees. I mean, are you with me? Sort of. So I think what I'm understanding is you're asking if the statute starts at the same time. If you find that the statute of limitations bars the first RICO claim, does it also bar the second RICO claim? Even though the court, the lower court, didn't rely upon – doesn't seem to have referred to the statute of limitations in dismissing the second claim. I think it's fair to say that would apply because Appellant was then on inquiry notice that something was going on. He didn't exercise reasonable diligence therefrom to investigate this further. He could have gone – he knew that Sarah, the grandmother, had a caretaker. He could have went and spoken to her. He knew that Sarah's health conditions before she died. He knew that she died. And he didn't go and investigate and talk with her to discover this alleged looting and the subsequent conservatorship, the petition to confirm the properties. He could have done this and gone and investigated and discussed with her, but he didn't. He sat and waited. So I think it would apply in that sense on the second conspiracy. And the courts have rejected the last predicate act rule, so under the Clare case, because that would allow a plaintiff to sit on his claims until that last predicate act creates a new four-year statute. And the mere continuance of the second conspiracy doesn't also toll his statute of limitations. Appellant did raise an argument in the reply brief that he should not be held to account for his attorney's knowledge, Mr. Bjorn's knowledge about the statute of limitations or the claims he may have had because it was fraudulent and concealed. However, there is case law that third-party innocent parties, such as the other alleged conspirators, they should not suffer as a result of an attorney's faulty advice to a client. I do want to get to the damages and standing issue. I think that's the clearest cut issue here in this case. We know from the trust documents and the testamentary documents that Paul Jr. was a contingent remainder beneficiary. That contingency is a conditioned precedent of Helene's death. She has not died. He's not entitled to inherit any assets from the trust until she dies. He's raised for the first time on appeal this issue of her discretion and abuse of the health, education, maintenance, and support. That wasn't raised in the lower court. And further on that issue, the trust is very clear that she has absolute discretion in her health, education, maintenance, and support. Paul Jr., if he disagreed with that, he could have brought claims on that issue in the probate courts. He also refers to this issue of ad justum generis and interpreting the will in the general assignment. The federal cases have held that ad justum generis is a construction of statutory interpretation. Or construction, excuse me. California cases have also held that, I'm sorry, California Civil Code 3534. Counsel, unless my colleagues have any further questions, I'm going to cut you off. Thank you. I think your argument was probably the most helpful, but this is another example of fact. Should not split up arguments like this. I understand. Sorry, Your Honors. Thank you. I have my work cut out for me in five minutes. Is that all I have left, five? Four minutes and 50 seconds. Four and 50. In reverse, I'll just hit the high points. He has the wrong trust. The last counsel was talking about the wrong trust. And the judge below was looking at the wrong trust and confused two different trusts. There's the grandmother's trust. Helene, the aunt, was not the settler of that trust. Her mother was. And then there was the aunt's separate trust. The aunt's separate trust was formed in 1997, several years before her mother established her trust, the Oger Trust. That's the only trust at issue in this Rigo case. It is certainly true that as to her own assets, which she placed in her own trust, Helene, the aunt, had unfettered discretion as the settler, not as a trustee, but as the settler of the trust, to use them as she wished. But she did not have unfettered discretion with respect to the assets of her mother's trust, as to which she was merely a trustee, a successor trustee. Well, let me be clear. She was a co-trustee and became the sole surviving trustee when her mother died. She had no unfettered discretion as to that. California law is crystal clear. You'll see it in our briefs. There is no such thing as absolute discretion. And if you are a trustee who also is a beneficiary, you're limited to the four specified needs that are in the California statutes. Didn't your clients settle a lot of these claims? Not as to the Oger Trust. There was a settlement with respect to the aunt's trust. Okay. It happened in litigation involving the aunt's trust. It has absolutely nothing to do with the grandmother's trust. The trial court below, for some reason, thought that upon the grandmother's death, the aunt received assets and then put them in her trust, her preexisting trust. That's not what happened, and it was precluded by the trust instrument, which said that it shall not be, the assets shall not be dispersed to the aunt, to Helene, but shall be put in a to-be-formed rollover trust that happened to have the same name as her own prior trust. And the trial court confused that completely. I just, as a side note, last counsel's argument contains really arguments that were never made in their responsive brief. They're being made now for the first time, responding here at the podium to what is in our reply brief. I think that's inappropriate. Going back now to the Wallace, that's the lawyer who did the motion to sanctify the deathbed deeds. There is a suggestion that there was no evidence, just conclusions, no factual allegations that weren't conclusions. That's not true. Isn't the claim, though, against the lawyer, and do you agree it's an aiding and abetting claim? Yes, but. What's the but? Well, there's two pieces to the but. The first piece to the but is this circuit has not decided whether there is or is not aiding and abetting liability under the RICO statute. Many district courts seem to think that because of the Central Bank of Denver case, there isn't. But that case involved aiding and abetting under 10B, not under RICO. Each time an implied cause of action issue arises, it becomes a question of congressional intent under that statute, and that's never been decided in this circuit. Number two, there are conspiracy allegations. And ever since 1997, with the Salinas decision in the Supreme Court, it's crystal clear that there is no need for actual operation or participation for conspiracy liability. What's required is that the defendant facilitated the conspiracy, and there is no space between facilitation and aiding and abetting. Just different words. It means the same thing. All right, counsel. It looks like you're out of your rebuttal time. Do my colleagues have more questions? All right. Well, thank you very much to both sides. This case will be submitted as of today.
judges: VANDYKE, JOHNSTONE, Christensen